ALAN E. NORRIS, Circuit Judge,
concurring in part and dissenting in part.
Truly, no good deed goes unpunished. The Majority recognizes that Superinten *636 dent Larry Vick had the authority to bar the re-enrollment of G.C. at Owensboro High School before the start of the 2009-2010 academic year. Principal Anita Bur-nette recommended such a course of action based upon G.C.’s record of disciplinary infractions. Plaintiffs own brief characterizes his behavior as “abhorrent.” Rather than take this advice, Superintendent Vick put the student’s wishes above those of Principal Burnette by giving him a final chance. Vick then met with G.C.’s parents in June of 2009 and outlined his concerns and expectations. Among other things, he told them that G.C. could enroll as a nonresident student for the next year “on the condition and understanding that, if he had any further disciplinary infraction, this privilege would be immediately revoked and he would be required to return to his home school district.” R. 69-17 (Vick Aff. at § 11) (Page ID # 500). In short, despite any misgivings he took a chance on G.C.
And how was this largesse rewarded? G.C. violated school policy shortly after the commencement of the new school year by using his cell phone in the classroom. For that infraction, his out-of-district student status was revoked. G.C.’s parents were informed and told of their right to appeal the decision. School officials met with G.C.’s parents the following month to consider their request that their son be readmitted. He was not. A layperson considering the actions of school officials might well conclude that G.C. had been fairly treated, that he had been given repeated opportunities to alter his behavior but had not taken advantage of them.
As lawyers, of course, we have come to recognize that what appears to be reasonable is not always legally sufficient. The Majority concludes that the district court erred when it held that G.C. did not have a property interest in an education within the Owensboro Public School District sufficient to trigger a right to due process. For the reasons outlined by the Majority, I agree G.C. enjoyed the due process protections set forth in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), although it is not clear from that record whether the June 2009 meeting and subsequent consultations between the parties satisfied those due process protections. That question, however, is best left to the district court on remand.
While I concur in the Majority’s resolution of the due process question, I must dissent from its decision with respect to the September 2009 search of G.C.’s cell phone. There is a reason that the Supreme Court in New Jersey v. T.L. O., 469 U.S. 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), concluded that the legality of a search in the school setting hinges on reasonableness in light of all the circumstances: school officials are acting in loco parentis and, as such, they have a keen interest in student welfare and safety. For that reason, they must be allowed more leeway under the Fourth Amendment than is appropriate outside the school setting.
What happened here? G.C. violated school policy by using his cell phone during class. Under the terms of that policy, his phone was seized, an action that he does not contest. The question then becomes, was a limited search of the phone’s text messages permissible? The school official who conducted the search was aware of G.C.’s. prior suicidal thoughts and drug use. She also knew that he had a history of disciplinary problems, which included fighting. Her duty as an administrator was to ensure the safety of the students, including G.C. Her subsequent search, which was limited to reading four text messages created that day, strikes me *637 as reasonable under T.L.O. I respectfully dissent.